*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AMERICAN SELECT INSURANCE COMPANY,

        Plaintiff-Appellee,

v

MICHELE INHMATHONG and RYAN CYONG LE-NGUYEN,

        Defendants,

and

CAD, a minor, by Next Friend ARNOLD CHRISTOPHER DANIEL,

        Defendant-Appellant.

FOR PUBLICATION
May 09, 2025
2:05 PM

No. 370037
Washtenaw Circuit Court
LC No. 22-001610-CK

Before: MURRAY, P.J., and M. J. KELLY and N. P. HOOD, JJ.

M. J. KELLY, J. (*dissenting*).

Because the event giving rise to this litigation does not constitute "an occurrence" under Michele Inhmathong's homeowner's insurance policy, it necessarily follows that there is no coverage under the policy and I therefore must respectfully dissent.

Ascertaining whether the policy affords coverage is a two-step process. First, a determination must be made whether there was an occurrence and, if that question is answered in the affirmative, then-and only then-is it necessary to establish whether there is an exclusion in the policy that vitiates coverage. See *Allstate Ins Co v Freeman*, 432 Mich 656, 667-668; 443 NW2d 734 (1989) (stating that "although some courts have addressed the exclusionary clause before determining whether coverage exists under a policy, . . . the proper construction of a contract requires that we determine whether coverage exists and then whether an exclusion precludes coverage."). Confounding the analysis in this case is its unique facts which render it difficult to squarely apply existing case law to. Ryan Le-Nguyen is not an insured under the policy and the complaint's allegations against Inhmathong do not involve her firing the gun. These points are

not in dispute. Where I part company with the majority is in their contention that "the alleged occurrence is Inhmathong permitting the reckless handling and use of a firearm on her property, not Le-Nguyen's commission of a battery or some other intentional tort." While this accurately describes the *allegations* against the respective defendants, it does not accurately state what the *occurrence* was. In my view, the occurrence was the gunshot intentionally fired by Le-Nguyen that resulted in a child being injured.

In pertinent part, the policy language at issue provides that an "[o]*ccurrence* means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in . . . [bodily injury] . . . ." Under the policy, if there is no "occurrence," then there is no personal liability coverage for damages because of bodily injury. In turn, the policy excludes coverage for personal liability for "**[b]odily injury** or **property damage** which is expected or intended by an insured, even if the resulting **bodily injury** or **property damage** . . . [i]s of a different kind, quality or degree than initially expected or intended . . . ."

Though not directly on point, *Mich Basic Prop Ins Ass'n v Wasarovich*, 214 Mich App 319;542 NW2d 367 (1995) is helpful here. In that case, Joseph Wasarovich arrived at the residence of his ex-wife and her roommate following a telephone call in which they had had a heated argument over the custody of their son. *Id*. at 321. He was armed with a gun. *Id*. After telling his ex-wife to lock the doors and draw the blinds on the windows he ordered the roommate to lie on the floor. *Id*. When the roommate refused, Wasarovich shot him dead. Id. He then proceeded to sexually assault his ex-wife, shot and wounded her, and then turned the gun on himself and committed suicide. *Id*. The estate of the roommate sued Wasarovich's ex-wife for negligence, alleging that she failed to protect the roommate from her ex-husband's crime. *Id*.

This Court found that, when the policy does not define an occurrence "from the standpoint of the insured," the court must consider only the incident itself in determining whether it was an accident. *Id*. at 328. In doing so, they held that the threshold question that a court must answer is whether the injury-causing act "constitutes an accident." *Id*. If it does, only then must the trial court consider whether the non-offending insured "expected or intended the result." *Id*. Addressing that threshold question the *Wasarovich* Court reasoned:

> We cannot say that Joseph Wasarovich's act of murdering [the roommate] was an "undesigned contingency" or "chance happening." Our analysis should focus on the injury-causing act. The trial court found, and neither party disputes, that Joseph Wasarovich intended to murder [the roommate]. That Patricia Wasarovich did not anticipate her ex-husband's act of murdering Feldt does not render the murder an undesigned contingency or chance happening. [*Id*. at 324.]

The court held that "[b]y considering Ms. Wasarovich's role in the murder, the trial court confused the threshold issue whether a policy provides coverage with the provision excluding liability from injury as a result of the intentional act." *Id*. at 325.

The policy in the instant action is similar to that in *Wasarovich* in that the definition of occurrence is defined as an "accident" and says nothing about whether it is to be "determined from the standpoint of the insured." Moreover, the act of Le-Nguyen intentionally shooting his gun out

the window and striking the child was not "an undesigned contingency" or "chance happening." Indeed, he pleaded no-contest to the charge of intentional discharge of a firearm under MCL 750.234b(b).[1] And, although negligence and nuisance are alleged against Le-Nguyen in the underlying lawsuit, this court has rejected attempts to transform claims involving elements of intentional torts into claims of gross negligence. See *Smith v Stolberg*, 231 Mich App 256, 258-259; 586 NW2d 103 (1998). To be sure, "It is well-settled that the gravamen of an action is determined by reading the complaint as a whole, and looking beyond mere procedural labels to determine the exact nature of the claim." *Adams v Adams*, 276 Mich App 704, 710-711; 742 NW2d 399 (2007). Finally, the majority attempts to distinguish *Wasarovich* by noting that it involved an intentional tort "committed by the insured." But for purposes of determining whether the shooting was an occurrence under the policy, that fact is irrelevant. The significant factor is that the injury-causing occurrence was not an accident, irrespective of whether the person who perpetrated the occurrence was an insured.

For these reasons, I would affirm.

/s/ Michael J. Kelly

---

[1] Although MRE 410 prohibits the use of nolo contendere pleas in certain situations, those do not apply here. This is an action to determine whether insurance coverage is available to the insured—Inhmathong—under her policy. Nobody here suggests that Le-Nguyen is an insured under the policy, so this is not a civil action "against the defendant who made the plea." MRE 410(a).